UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELIA ZAMILPA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LELAND DUDEK,<br><br>Acting Commissioner of Social Security,[1]<br><br>　　　　Defendant. | Case No. 1:24-cv-00483-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.　INTRODUCTION

On April 24, 2024, Plaintiff Celia Zamilpa ("Plaintiff") filed a complaint under 42 U.S.C. § 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.　FACTUAL BACKGROUND

On January 5, 2019, Plaintiff filed an application for SSI payments, alleging that she became disabled on August 22, 2017. (Administrative Record ("AR") 239–50.)

Plaintiff was born on February 8, 1969, and was 59 years old on the application date. (AR 241.)  Plaintiff had previously worked as a personal homecare provider, (AR 1078), a receptionist, (AR 1079), bookkeeper, (*id.*), customer service representative, (AR 1080).

**A.　Relevant Medical Evidence**

Medical records indicate that Plaintiff has regularly attended pain management for

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn Colvin should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 8, 9.)

complaints of back pain.  (AR 530, 773, 777, 782, 787, 797, 802, 813, 970, 976, 982, 996, 999, 1002, 1008, 1010, 1015, 1021, 1026, 1031).  The records report that Plaintiff's pain was "stable" and that medication improved her pain, but even with that improvement, Plaintiff described her pain as "moderate, burning, constant, and stabbing;" "moderate, pain on movement and shooting," "full body," and "scale: 8/10."  (AR 1420, 1423, 1425.)

These records also state that during Plaintiff's pain management appointments, she exhibited abnormal and painful range of motion and positive straight leg raise testing (indicative or radiculopathy) on the left side.  (AR 784, 789, 795, 799, 805, 810, 816, 973, 979, 985, 1005, 1013, 1018, 1024, 1029, 1033, 1473, 1477, 1481, 1485, 1489, 1493); *see* Crystian B. Oliveira et. al, *Clinical Practice Guidelines for the Management of Non-Specific Low Back Pain in Primary Care: An Updated Overview*, 27 EUR. SPINE J. 2791, 2793 (2018), https://link.springer.com/article/10.1007/s00586-018-5673-2?utm_source=getftr&utm_medium=getftr&utm_campaign=getftr_pilot  ("most guidelines recommend neurologic examination to identify radicular pain/radiculopathy including straight leg raise test").  Plaintiff's back pain was treated with hydrocodone, in addition to several invasive procedures—including bilateral epidural steroid injections in October 2017, (AR 708), lumbar medial branch blocks in April 2018, (AR 727), thoracic medial branch blocks in May 2018 and June 2018, (AR 735, 743), thoracic medial branch radiofrequency neurolysis in July 2018, (AR 751), a Toradol injection in May 2019, (AR 800), trigger point injections in September 2019, (AR 1034), thoracic medial branch blocks in September 2019, (AR 1008), and thoracic medial branch radiofrequency neurolysis in June 2020 and October 2020, (AR 968–87).

Additionally, the records reflect several diagnostic studies of Plaintiff's spine that showed various abnormalities.  August 2018 MRIs showed "moderate to severe . . . stenosis," and marked thoracolumbar scoliosis. (AR 822). And October 2019 x-rays showed "moderately severe convex right mid thoracic rotoscoliosis" measuring approximately 40 degrees and "moderate convex left lumbar rotoscoliosis," measuring approximately 23 degrees.  (AR 904.)  Those x-rays further showed "severe degenerative narrowing of L4-L5 and L5-S1 disc spaces, moderately severe narrowing of L3-L4 disc space and moderate narrowing of L2-L3 disc space," as well as "chronic

hypertrophic degenerative changes of the facet joints at L4-L5 and L5-S1 levels." (*Id.*) Additionally, a December 2019 MRI showed Plaintiff had "dextroconvex spinal curvature of the thoracic spine." (AR 1259). Later examination records also noted that this imaging indicated degenerative osteoarthritis changes in her lower cervical spine." (AR 1401–02).

Medical examinations further demonstrated that Plaintiff had limited thoracolumbar range of motion, (*see* AR 451, 700, 1005), "pain with lumbar spine range of motion testing," (AR 1005), "pain with range of motion in the thoracolumbar spine," (AR 1018, 1029, 1033), "tenderness in the cervical, lumbar, and left sacroiliac joint," and "tenderness to palpation over the lumbar facet joints," (AR 447).

The record also reflects a consultative exam performed in November 2023. (AR 1672–77.) That examination report included observations that Plaintiff was able to "get out of[a] chair," "walk at a normal speed" to another room, and "take shoes and socks off and put them back on again." (AR 1673.) The exam findings also reflected "normal gait," no coordination concerns, (AR 1674), and "intact sensation," (AR 1676.)

**B.      Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on May 16, 2019, and again on reconsideration on December 6, 2019. (AR 99–100, 133–34.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 148–49.) On February 9, 2021, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 33–61.) A vocational expert ("VE") also testified at the hearing. (AR 61–72.)

In a decision dated February 9, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 12–26.) Plaintiff sought review of this decision before the Appeals Council, which denied review on October 8, 2021. (AR 1–3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481. On November 30, 2021, Plaintiff filed a Complaint in the United States District Court seeking judicial review of the Commissioner's final decision. (AR 1140.) On September 16, 2022, the parties stipulated to voluntary remand of Plaintiff's case for a new decision regarding whether she was disabled. (AR

1144.) On September 22, 2022, the Court issued an order accepting the stipulation and remanding. (AR 1144, 1144–48.)

On remand to the agency, the ALJ held a new hearing on September 7, 2023, at which Plaintiff and a vocational expert again testified. (AR 1069–108.)

### 1.    Plaintiff's Testimony

Plaintiff testified she has back pain "from [her] neck down," for which she takes hydrocodone and a muscle relaxer which "makes [the pain] a little bit more manageable but the pain is still there." (AR 1086.) She further testified that the medication "does not take the pain away," rather "[i]t just helps [her] manage [the pain] a little." (*Id.*) She also testified that it affects her ability to sit in that she needs to get up "once or twice" in a 30-minute period. (*Id.*) She continued by testifying that she needs to lie down "four or five times during the day" for "at least 15 minutes" and "30 minutes" when she takes her medication, which she needs to take two to three times a day. (AR 1087.) Plaintiff further stated that her pain affects her ability to walk and stand, noting specifically that she can sometimes walk a to a part that is about a "half a block" from where she lives, but that she "can't . . . stay there too long because [she] can't stand and [she] can't sit" and that she is "already in pain" when she walks back home. (AR 1087.) She also described how she generally starts "hurting" about 15 to 20 minutes into shopping, that she has "to stop a few times and just try to breathe and try to get through it," and that he's "in pain most of the time that [she] is there." (AR 1088.)

### 2.    Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that, based on their experience, more than one day of absenteeism per month and / or an additional fifteen-minute breaks would be preclusive of any position. (AR 1101.)

**C.    The ALJ's Decision**

The ALJ issued a decision on March 13, 2024, again finding that Plaintiff was not disabled. (AR 1037–61.) In that decision, the ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 1043–61.). The ALJ decided that Plaintiff had not engaged in substantial gainful activity since August 22, 2017, the application date (Step One). (AR 1043.)

At Step Two, the ALJ found Plaintiff's following impairments to be severe: obesity, fibromyalgia, carpal tunnel syndrome, trigger thumb, hypertension, disorder of the cervical, thoracic, and lumbar spine, chronic pain syndrome, dysfunction of the bilateral hips, seizure disorder, tremors in legs, small fiber neuropathy, and Piriformis syndrome. (AR 1043.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (Step Three). (AR 1048–50.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] if she stopped her substance use and applied the assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the individual can perform light work with the following exceptions: The individual can never climb ladders, ropes, and scaffolds. The individual can occasionally climb ramps and stairs. The individual can occasionally balance on narrow, slippery, or erratically moving surfaces. The individual can occasionally stoop, crouch, kneel and crawl. The individual can handle objects, that is gross manipulation frequently with the bilateral upper extremities. The individual can finger that is fine manipulation of items no smaller than the size of paper clip frequently with the bilateral upper extremities. The individual can feel frequently with the bilateral upper extremities. The individual can have no use of hazardous machinery and no exposure to unshielded moving mechanical parts. No exposure to unprotected heights. No exposure to extreme vibrations.

(AR 1050.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 1052.)

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours per day, for 5 days per week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ determined that Plaintiff could perform her past relevant work (Step Four). (AR 1059.) Additionally, as an alternative holding and based on the vocational expert's testimony, the ALJ also found that Plaintiff could perform a significant number of jobs in the local and national economies, specifically office helper, marker, and garment sorter (Step Five). (AR 1059–60.)

Plaintiff now seeks judicial review of the Commissioner's decision under 42 U.S.C §§ 405(g), 1383(c)(3).

### III. LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . . to perform any other substantial gainful activity in the national economy. If so,

the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.  Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a

whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

### IV.  DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting her allegations of pain and physical dysfunction affecting her spine, upper extremities, and lower extremities including back pain, carpal tunnel, upper extremity pain, and fibromyalgia. (Doc. 12 at 13–20.)  The Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations.  (Doc. 13 at 4–15.)  The Court agrees with Plaintiff that the ALJ improperly discredited her subjective symptom statements with respect to her back pain and will remand for further proceedings.

**A.  Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id*.  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.     Analysis**

As noted above, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (AR 1052.) The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were "not entirely consistent" with the medical record. (*Id.*) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

In support of the conclusion that Plaintiff's complaints were "inconsistent" with the record, the ALJ relied upon purported inconsistencies with the "medical evidence, including mental and physical exams and imaging." (AR 1052.) The Court must determine whether this constitutes a clear and convincing reason for discounting Plaintiff's statements.

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "[w]hile subjective pain testimony cannot be rejected on the

9

sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").  Because the ALJ did not base their decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor evaluating her subjective complaints.

However, if an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[G]eneral findings are an insufficient basis to support an adverse credibility determination").  Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").  The ALJ must explain *how* the medical evidence is inconsistent with a plaintiff's reported symptoms and limitations, *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015), and may not "cherry-pick" medical evidence that favors disability without considering its context in the record, *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

As noted above, in determining that the medical record did not support Plaintiff's statements about the severity of Plaintiff's limitations, the ALJ relied on several pieces of medical evidence. A review of the record reveals the ALJ misrepresented the medical evidence and failed to explain *how* the medical evidence was inconsistent with Plaintiff's reported symptoms.

First, the ALJ misrepresented the evidence in the record.  The ALJ opined that the objective medical record showed various "normal" imaging and examination results and that the record demonstrated Plaintiff had mild or mild to moderate clinical concerns as to her cervical, thoracic, and lumber spine including "mild degenerative changes of the hips" and "mild to moderate stenosis and minimal thoracic disc bulge." (AR 1055.)  With no citation to the record, the

ALJ found that Plaintiff's scoliosis was "not significant." (*Id.*)  An August 2018 MRI of Plaintiff's lumbar spine, however, showed "***moderate to severe*** . . . stenosis." (AR 835 (emphasis added).)  And an x-ray performed in October 2019, showed "***moderately severe*** convex right mid thoracic rotoscoliosis" measuring approximately 40 degrees and "***moderate*** convex left lumbar rotoscoliosis," measuring approximately 23 degrees. (AR 904 (emphasis added).)  The x-ray further showed "***severe*** degenerative narrowing of L4-L5 and L5-S1 disc spaces, ***moderately severe*** narrowing of L3-L4 disc space and moderate narrowing of L2-L3 disc space," as well as "chronic hypertrophic degenerative changes of the facet joints at L4-L5 and L5-S1 levels." (AR 904 (emphasis added).)  The ALJ's characterization of the medical evidence related to medical imaging of Plaintiff's spine is not supported by the record.

Additionally, the ALJ observed that Plaintiff "was tolerating medication without adverse effects" and that "[p]ain was described as stable, and improvement in pain was noted with current medication."  And while the record does support the ALJ's finding that plaintiff reported improvement with pain medication, (AR 1055–56, 1421, 1423, 1425), those same treatment notes provide important context for those descriptions.  The same notes that include the language "[Plaintiff] reports improvement in pain with current medication," do so in the context of Plaintiff reporting current pain *with medication* as being "moderate, burning, constant, and stabbing," "moderate, pain on movement and shooting," and "scale: 8/10." (AR 1420, 1423.)  Moreover, where notes detail pain being stable, those notes also include corresponding reports of an "8/10 pain level, complaining of full body pain."[4] (AR 1425.)  The ALJ's cherry-picked reliance on reports that stated Plaintiff's pain was "stable" and "improv[ed]" are not clear and convincing reasons to support their decision in light of the broader context of Plaintiff's continued reports of constant, 8/10, full-body pain.

Second, the ALJ failed to adequately explain how the medical evidence was inconsistent with Plaintiff's reported symptoms and limitations.  As an initial matter, the ALJ's analysis

---

[4] And, as Plaintiff points out, these continued reports of pain are consistent with Plaintiff's "persistent attempts to obtain relief of symptoms," including at least seven procedures on her back, (AR 727, 735, 743, 751, 968, 987, 1008), which can "be an indication that an individual's symptoms are a source of distress and . . . that they are intense and persistent," Social Security Ruling (SSR) 16-3p (2017 WL 5180304).

includes several paragraphs in which the ALJ merely recites medical evidence and made a general finding that that "evidence [was] inconsistent with the alleged symptoms and limitations," without reference to which specific symptoms or limitations the evidence was relevant. (AR 1055–56.) Without an indication of *which* symptoms or limitations the ALJ was referencing or clear inconsistencies between the medical evidence recited and Plaintiff's reported symptoms and limitations, the ALJ's "path [cannot be] reasonably discerned." *Molina v. Astrue*, 674 F.3d 1112, 1121 (9th Cir. 2012); *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020).

This is especially so in light of the fact that these paragraphs culminating in a general conclusion of inconsistency with Plaintiff's reported symptoms and limitations also include evidence that appear to support Plaintiff's reports and undermine the ALJ's conclusion. For instance, these paragraphs include reference to evidence that Plaintiff had "limited thoracolumbar range of motion, pain with lumbar spine range of motion testing," and "tenderness in the cervical, lumbar, and left sacroiliac joint," and that that "[c]ervical spine imaging indicated degenerative osteoarthritis changes in her lower cervical spine." (AR 1055).

Further, even where the ALJ recounted evidence that did not directly support Plaintiff's allegations of symptoms, the ALJ did not explain how that evidence was *inconsistent* with Plaintiff's allegations. For instance, the ALJ took note of Plaintiff's normal gait and ability to "get out of[a] chair," "walk at a normal speed" to another room, "take shoes and socks off and put them back on again." (AR 1053.) In addressing Plaintiff's reported pain, the ALJ also drew a contrast between evidence of "spinal degeneration," and Plaintiff's "normal gait, negative straight leg raise, and intact sensation and coordination." (AR 1056.) But that contrast does not reveal an inconsistency[5] nor is it otherwise clear how any of this evidence is inconsistent with the alleged symptoms and limitations, especially considering the ALJ's did not specify which symptoms and limitations with which this evidence was purportedly inconsistent. Perhaps most importantly, in light of the VE's testimony that an additional 15-minute break every day would be preclusive of employment, (AR 1101), the ALJ did not explain how any of this evidence was inconsistent with

---

[5] This part of the ALJ's analysis also suffers from the separate problem of misrepresenting the record, as the record includes evidence of positive straight leg raises. (AR 784, 789, 795, 799, 805, 810, 816, 973, 979, 985, 1005, 1013, 1018, 1024, 1029, 1033, 1473, 1477, 1481, 1485, 1489, 1493.)

Plaintiff's testimony that she needed to get up once or twice during a 30-minute program or lie down for at least 15 minutes four to five times a day due to pain. (AR 1051, 1086–87); *see Maldonado v. Comm'r of Soc. Sec.*, No. 1:20-CV-01506-EPG, 2022 WL 1138113, at *3 (E.D. Cal. Apr. 18, 2022) ("[W]hile it is true that Plaintiff had some normal physical examination findings relating to his strength, range of motion, sensation, gait, and reflexes, the ALJ failed to explain how any of these findings were inconsistent with Plaintiff's testimony, which generally alleged disabling pain in his feet, hands, and back.").

Finally, even where the ALJ was more specific about which of Plaintiff's alleged limitations he found inconsistent with the medical evidence, his analysis still failed to explain *how* that evidence was inconsistent with Plaintiff's reported symptoms. For example, after reciting a paragraph of medical evidence, the ALJ concluded "[t]his evidence is further inconstant with the alleged limitations in standing and walking." (AR 1055.) But it is not clear why the evidence he recounted supports that conclusion. First, the ALJ's recitation of the medical evidence includes evidence that would seem to support Plaintiff's claims. For instance, the ALJ noted that Plaintiff's "lumbar range of motion was abnormal," "diagnostic imaging showed lumbar, thoracic and cervical degeneration," and "there was tenderness to palpation over the lumbar facet joints," "pain with range of motion in the thoracolumbar spine," and "dextroconvex spinal curvature of the thoracic spine." Second, the ALJ's recitation of the medical evidence includes its own internal inconsistency that is not explained. For example, in the same paragraph, the ALJ found that Plaintiff's "straight leg raising was negative," but later stated that Plaintiff had a "positive straight leg test on the left."[6] (AR 1055.)

Based on the foregoing, the Court cannot find the ALJ met the burden to identify evidence in the record that conflicts with Plaintiff's statements concerning the severity of her back pain and symptoms and her reported corresponding limitations. The purported inconsistencies with the objective medical record are not clear and convincing reasons to support the ALJ's decision.[7]

---

[6] Indeed, there are also numerous examples of positive straight leg tests included in the record. (*See* AR 784, 789, 795, 799, 805, 810, 816, 973, 979, 985, 1005, 1013, 1018, 1024, 1029, 1033, 1473, 1477, 1481, 1485, 1489, 1493.)

[7] The error is not harmless. Had the ALJ credited Plaintiff's statements related to her back pain and assessed a more restrictive RFC, the disability determination may have been different. (*See, e.g.*, AR 1101 (VE testimony more than

**C.     Remand for Further Proceedings**

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa*, 367 F.3d at 886 (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Plaintiff requests the matter be remanded for an immediate award of benefits, or, in the alternative, for further administrative proceedings. (Doc. 12 at 29.)

The ALJ failed to identify legally sufficient reasons to reject Plaintiff's subjective statements, which impacted the RFC determination. A remand for further proceedings regarding the subjective statements of a claimant is an appropriate remedy. *See, e.g., Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Thus, a remand for further proceedings to properly assess Plaintiff's subjective symptom statements is appropriate in this action.[8]

**V.     CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Celia Zamilpa and against Defendant Leland Dudek, Acting

---

one day a month of absenteeism or an additional 15-minute break every day would be preclusive.).) Thus, the error was not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

[8] Because further proceedings will necessitate the re-evaluation of Plaintiff's symptom statements as a whole, the Court does not reach the issue of the ALJ's treatment of Plaintiff's allegations of mental impairments due to anxiety and depression. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **March 3, 2025**                             /s/ *Sheila K. Oberto*
                                                                            UNITED STATES MAGISTRATE JUDGE